Morning, Your Honor. Shea Murphy on behalf of Samuel Arrington, plaintiff and appellant. I keep track of the time up here, correct? You do keep track of the time. So while there are two dispositive issues in this appeal, I really want to focus on what I think is the heart of this case, given what's happened with the Bain Act issue in light of Reese and this Court's decisions, as well as Cornell. So I want to focus primarily on the 1016 issue and the interplay between 1016 and the heck bar. Can I ask a question? You mentioned briefly in your brief that there is a federal analog to 1016, right? Correct. Federal of Evidence 410. Why are we talking about a state rule in federal court rather than a federal rule in federal court? Well, for two reasons. One is the penal code is not an evidentiary code. It relates specifically to the characterization of the plea that was entered in this case in a California state court. So the conviction, which is a California state conviction, is predicated on the plea that was entered. Yes, but Heck v. Humphrey and its progeny are about reconciling two federal statutes, right? 1983 and the habeas statute. So there are substantive rules, and I'm not sure. There are many instances in which the state's characterization of its conviction is not necessarily respected by federal law. In immigration cases, for example, expungements and so on. So I was just having a hard time with all that. And then when I realized there was a, at least as to your second issue, I understand that on the first issue, that is, I'm characterizing the first and second, the first one being whether the false arrest and the second one being the excessive force that went to trial. On the excessive force that went to trial, I don't understand, and the question of whether the instruction was correct and whether the jury should have been told about the no appropriately, I don't understand why Rule 410 isn't the relevant one. It very well could be. It was cited in the brief. I think the reason why the briefs were structured the way they were, at least with respect to my perspective on the briefing, is that the district court was focused on 1016, and the way that Penal Code 1016 defines the pleas that parties can enter, it seemed analytically that that was the predicate to the conviction. All right. We'll go on with your argument, but I would be interested in knowing why on the second issue, when you get there, 410 isn't relevant and isn't helpful to you. Okay. Particularly because there happens to be a Third Circuit case almost directly on point  So go ahead. That's good news and bad news, I suppose. Well, and I can kind of try and incorporate 410 into the best of my abilities, because I know that 410 focuses on no-contest pleas, but there's case law out there that allows for the existence of a conviction based on a no-contest plea to come in. Okay, but what happened here was they were told about the no-contest plea and not just about the conviction. But let's go back to it. I don't want to hijack your whole argument. Go ahead. I don't want to mud over the germane components of this particular case because I've fixated on Penal Code 1016. But the idea would be under 1016 that you have an exclusion, you have a definition of a no-contest plea that provides the basis for a conviction, but also provides the basis for a state court to adjudicate a criminal proceeding. And what that 1016 no-contest definition does is provide a framework for an agreement between the state as a law enforcement entity and the criminal defendant. And pursuant to that agreement, specifically with respect to no-contest pleas and misdemeanor cases, and once upon a time this applied to all cases, including felonies, but with respect to misdemeanor cases, you cannot rely on you being the plaintiff or the defendant in a subsequent civil matter. You cannot rely on either the plea or the predicate factual issues or the predicate facts, the facts that underlie that plea, to disadvantage. And this defendant was explicitly told by the trial judge, but I don't know if this makes any difference, that you should plead no-lo because it will not affect your ability to bring your civil action. Presumably his public defender or the court told him to do that. No, not presumably. The court told him a great length if you read the transcript. Okay. Over and over again. Okay. So go ahead. I mean, that's how these typically operate, and it's not surprising here. Most of the time it's a way of moving people through the criminal justice system. And also because this case had already been filed, and he specifically raised the problem. Right. So go ahead. Okay. So that being what it is, he's relying on the state statutes, relying on representations of the district attorney and the court system with respect to the significance of the plea that he's entering in connection with his ultimate conviction. Does the no-lo plea result in a conviction? It does result in a conviction. Okay. And heck is a rule of whether a claim is cognizable, correct? Yes, it is. That is correct. So under heck, if there is a state court conviction, and you are agreeing that this no-lo plea did, in fact, result in a conviction, then the court has to consider whether the successful 1983 claim would call into question the conviction, which is what heck prohibits. So it seems that 1016 in the context of heck is misplaced because the court isn't looking at the conviction to use it in the administrative case where they were revoking somebody's, I think, dental license to establish the facts that occurred. The court's just looking at the fact of a conviction, not what facts were underlying the conviction at the point to decide if there's a cognizable 1983 claim. Right. So why is Section 1016 even relevant to that federal claim in federal court? For two reasons. One is that the way 1016 has been construed by the California Courts of Appeal and the California Supreme Court is that it embraces not just the plea but the conviction as well. So the conviction itself is not admissible. And can the California Supreme Court overrule the United States Supreme Court on an issue of whether a 1983 claim is cognizable in federal court? Well, this ties into the underlying analysis in heck. Heck was primarily concerned with collateral attacks on the validity of a conviction. And in the way of the habeas universe of heck. Could your client have brought a habeas with regard to this no-lo plea? Presumably, yes. Yes, presumably, yes. So the problem exists with regard to a no-lo plea because a no-lo plea does with regard to the conviction. So if, for example, there was something that led up to a no-lo plea that he deemed was unconstitutional, because it was a conviction, he could go to federal court and challenge it on habeas. Correct. Right. So the problem that heck is addressed to exists in this context precisely because there is a conviction. I don't understand that. For the purposes of a habeas petition, 1016 has no application. Well, I understand that. But what I'm saying is that the problem that heck is trying to deal with is if you have an available habeas and you don't use it, can you instead do a 1983? Could he have done a habeas on this precise issue? Presumably, yes. Yes, right. That's the problem because it was a conviction. No, I understand that. And this does tie into the 410 issue, and I want to maybe move on to that because I understand that the court is sort of recognizing that there's the existence of the conviction as an independent concept. So assuming that that's the case, and, you know, without forfeiting my position with respect to 1016. But you did acknowledge that a nulloplate does result in a conviction. Yeah, it absolutely does. But, I mean, it seems to me that the concern that the court, that the U.S. Supreme Court had in heck with these collateral attacks is obviated by the operation of 1016 because in California, the legislature has deemed it not a concern with respect to both the plea and the conviction. It's okay to collaterally attack this. Well, let's go to the second issue, which seems to me to be a much closer issue for you. Okay. So in this context, the fact of the existence of a conviction is an agnostic thing. It just exists out there as a conviction. It doesn't have factual surroundings other than there was a court that found you guilty or was able to impose a sentence on a criminal. And I gather there's general agreement in the California Supreme Court opinion, also understands, in our own opinion and Smith understands, that you can bring an excessive force charge even without running into heck, as long as the excessive force claim has some existence outside whatever it was that gave rise to the. Right. So there's two components to this. One is, can the court, I mean, in this context, it seems to me that under 410, the FRA 410 and a formulation of 1016 where the fact of the existence of the conviction exists, the court could have dismissed all of the false arrest claims and then not given the instruction that it did, that really folded into it a whole milieu of factual assumptions. It could have instructed, could have just have instructed, that any excessive force that was used beyond what was needed to, reasonably needed to arrest him can give rise. And it was without saying why that was the case, i.e., because he had a conviction, a valid conviction, he could just have said it without getting into the conviction. Well, it seems he could have, absolutely. And that's sort of like maybe the next step in the process. The first step being what I was originally advocating. The second step being the court could have just said, Mr. Arrington has been convicted of a crime. Well, why do you have to even say that? Why could he have just expressed what the standard was for excessive force, assuming the conviction but without reporting the conviction? He could have done that, absolutely. I mean, he could have. It presupposes that, at least with respect to FRE 410 and 1016, you can't admit the underlying facts that support the no-contest plea or the no-contest plea itself. So once you start instructing the jury, hey, Mr. Arrington has entered a no-contest plea to resisting arrest, right, and here is the standard that you need to measure excessive force with in the context of resisting arrest. Really what it should have been was Mr. Arrington has been convicted of a crime because that's all I can under FRE 410 tell you. Other than that, the standard analysis for excessive force applies, irrespective of whether or not he was resisting arrest, because it's for the jury to make the fact determinations based on what unfolded as presented to the jury. Well, the problem is that they have to back out. Somehow any force used for the lawful arrest has to be backed out, right? Correct. Yes. And somehow that has to be conveyed to the jury. But I don't know that it has to, because in order for that force to be backed out, it has to be communicated to the jury that the factual predicate that he actually committed a resisting arrest, that has to be communicated to the jury. Right. But under 410 and under 1016, that can't be communicated. That's a factual predicate to the plea. So here's the question, because these were the facts in a third-degree case. Can he stand up there and say, I didn't do any of that, it was all untrue, what they said I did? He should be able to. And they shouldn't be able to introduce either the conviction. They could introduce the conviction, at least under 410, but not the no-law play. So the legal effect of the conviction would be to undermine the false arrest, false arrest claims, essentially. Because, obviously, if you have a valid arrest under HEC, which directly addresses this, then the subsequent incarceration is justified. So there's a kind of intellectual, cognitive connection between the two that binds those two together, irrespective of what the arrest was for. The arrest could be for murder, the arrest could be for larceny, and the arrest could be for loitering. But as long as it's about the... I was sort of curious about that, because it's not necessarily true. I mean, that is, you can have an invalid arrest and a valid conviction, i.e., you could have a second valid arrest, and you could have a valid arrest and an invalid conviction. So I don't understand exactly why the false arrest ties directly to the conviction. I'm getting off now. I mean, this is a different point. And I don't think that really is what HEC was about. Was it about an arrest, a false arrest? No, it was about somebody who had been... Now I'm drawing a blank. I believe it was about somebody who had been kept in jail for too long. Right. So it wasn't about a false arrest. I'm not sure this assumption that the false arrest translates to an attack on a conviction is even right, but nobody...that seems to be an assumption. It's an interesting point. That is an interesting point. But I thought HEC was about false arrests in the sense that he said, I was wrongly arrested because I actually didn't do what I was convicted of. So my understanding of the case was that he was arrested and held for a prolonged period of time, and then he sued for that prolonged period that he was held for, and the underlying argument was that the arrest was incorrect. That was my understanding. And the court says, you can't... We have habeas petition, we have direct appeal procedures, all of which are in place. You can't collaterally attack your incarceration and conviction by way of a 1983 claim. You have to limit yourself to the procedures that have been provided to you, either through federal habeas, state habeas, or appeal. And that's been sort of moved out into other arenas by virtue of cases like Yaunt, where the analysis, the core almost like claim preclusion analysis or issue preclusion analysis at the heart of HEC has been expanded into state tort claims. But for the purposes of this case, it seems like... I mean, it would seem to me that you could just have a conviction, and that conviction could be announced to the jury. He has been convicted of a crime, right? And for the purposes of dismissing all of the false arrest claims, that issue is actually no longer relevant to anything that's before the jury because the only thing before the jury now is excessive use of force. But this is the problem. Something is relevant in order to get them focused on the fact that not... If he hadn't done anything, then any amount of force would have been excessive. So there has to be some cabining of what force they're supposed to be focusing on. Well, so presumably the instructions with respect to police use of force that exist independent of a conviction would be supplied to the jury, and the jury would be cabining... And that rule is if you haven't done anything, they can't use any force. So therefore there has to be some way for the jury to understand that that's not the circumstance. There are lots of use of force cases that involve something short of an ultimate conviction for a crime. You have people that engage in reasonably suspicious conduct that elicits the attention of the police that then proceeds into enough of a probable cause to effect a stop and a search, and you have an interaction between the police and the... I'm going to cut you off right after this question, unless one of my colleagues has a question. So if he had gotten up there and said, I didn't do anything, and all the force that they used on me from beginning to end was excessive because I didn't do anything, could they have come in and said, wait a minute, you were convicted for resisting arrest? Not the NOLO plea, but you were convicted. No, because it's not... I don't see an impeachment connection there, and under 410 and 1016, the only legitimate entrance of that... The only legitimate way to bring that evidence into the case is through impeachment. Well, 1016 seems to be interpreted to include the conviction, but 410 has been interpreted not to include the conviction. But does the conviction embrace the actual underlying charge, or is the conviction a freestanding thing? It seems to me that the conviction could just be a freestanding thing. But even if that were the case, and I'll back away because I know I've totally exhausted my time. Yes, you have. The court definitely could have instructed on a whole array of presentations of this particular information short of what it did. Okay. Thank you. Thank you. Good morning, Your Honors. Deputy City Attorney Sean Dabney-Jacobs for the defendant, City of Los Angeles, and the officers as well. I agree with Your Honors that I don't think penal code section 1016 applies in this incident because of the heck bar. It's not supposed to be met. What Mr. Arrington is trying to do is use it as a sword instead of a shield. And since one of the elements for a false arrest or malicious prosecution, false imprisonment claim, would be whether the conviction is valid or it somehow invalidates the conviction, it absolutely bars any kind of false arrest claim. That goes to the first issue. But what about the second? Once you go to trial on the excessive force, then what? In terms of whether it comes in? Well, the conviction of the 148 should still come in. Why? Because. And what about Rule 410, which nobody has talked about? I mean, it's a pretty tough rule, i.e. no conviction can't, no plea, the plea, not the conviction, can't be admitted. But the plea here was admitted. Right. But it was also the fact that the conviction was admitted, too. Also. But the plea was admitted. Well, I think that the conviction for the 148 has to come in because part of the elements of the excessive force claim are whether the officers used reasonable force or not. Well, I don't know why it has to come in, but we can talk about that in a second. But the plea came in. Right. I mean, I would argue that it's harmless error or it's not prejudicial in this case because, I mean, I think in the jury's mind, once they hear the fact of a plea or a conviction, I don't think they're going to make the distinction about whether. But they say he admitted it. That's different from saying he was convicted of it. Well, there was a factual. In terms of his overall credibility and otherwise. Well, there was a factual. When the court took the plea, it did make a factual finding of innocence. I'm sorry? When the court took the plea, when the criminal court took the plea, the 148 plea, it did make a factual finding of innocence. So if it's innocent, then what? I mean, not a factual finding of guilt. I'm sorry. But he did specifically tell the guy, the defendant, that this would have no impact on his already pending federal 1983 case. And the prosecutor didn't suggest otherwise. And I think that was a mistake by the court, and I think it was a mistake by the prosecutor because that's not the law under HECLA. So is there some estoppel that applies here? It kind of reminds me of the scene. You probably don't know this case, but the Supreme Court St. Cyr case in immigration circumstances, where the Supreme Court held that state court pleas, which assumed that there would be no immigration consequences. When there later were immigration consequences, that was a due process violation. So if this guy was told specifically, and he was, I mean, he said, I'm not going to do this because of my civil case. And the judge said, oh, no problem, because it's not going to be able to come in, your civil case. Right. And I remember reading that and thinking that's just the court had it wrong. Okay, fine. But from this person's point of view, it seems pretty clear he wouldn't have entered that plea because he said he wouldn't have. He did speak with counsel after the court spoke to him. They gave him an opportunity to speak with counsel. I think he did. I mean, I know for parts of it he was pro per, but there was always standby counsel and parts of it he was represented. I don't remember specifically off the top of my head whether he was represented by counsel or not when he took the plea. But I would say that it's still relevant in terms of, because it still has to come in in terms of the heck, for heck purposes, because part of heck is that if the conviction in some, or if the 1983 action somehow will invalidate the conviction or so forth. Well, no, not necessarily, right? Right. And if there was, so it wouldn't necessarily invalidate the, in other words, if there is a possible excessive force claim, then it wouldn't necessarily invalidate the conviction for there to be found excessive force. The jury would have nothing to say about what happened to the conviction. Right. But they have to, but in the sense that they have to know about the 148, because if you just say, if he's just allowed to say there was excessive force, I did absolutely nothing. That, and a jury believed that, and we weren't allowed to explain why there was probable cause, why he was resisting arrest and all the rest of it. That would, that could call into question the validity of the 148 conviction. This is why it seems so odd to me that the 410 thing has been back-burnered here, and I may, it's possible we should have briefs on the 410 issue, because you have a federal rule. It's a very clear federal rule. It's not murky in the least. It's been forced, as I say, in a fairly similar third-circuit case, where they specifically said I can stand, he did stand up and say I didn't do anything, and the court said he can do that because of 410, and recognizing that argument. So you have one federal rule, heck, and you have another federal rule, the 410 rule, and the question is how do we reconcile them? Now, if you were talking about the California 1016, I'd say, well, the federal rule wins. The federal, heck, wins, but this isn't. This is two federal principles, and the question is what do we do with them? Yeah, and unfortunately I didn't, I'll be honest with you, Your Honors, I did not focus on the 410 issue at all, so I can't intelligently speak to that. It is in the briefs. It's an interesting issue, as well as I should, but I would say that probably the same, even though I realize that 1016 is a state law and 410 is a federal law, I would sort of say the same underlying policy considerations would apply, because you do have a lot of federal cases that talk about the fact that there is a 148 conviction and the fact that that does impact the excessive force. But why couldn't the judge simply have instructed the jury that without regard, not saying anything about the lawfulness of the arrest, just that any force that was used in excess of what was needed to arrest him was what the focus was? The lawfulness or non-lawfulness of the arrest didn't have to be an issue at all. Well, to get a 148, well, to assume that there was excessive force in the 148, you have to assume first that the officers were lawfully performing. I understand that. That's true for a 148, but for this purpose, which is to explain to the jury what the excessive force federal constitutional claim is, why does the jury have to worry about whether the arrest was lawful or not lawful, as opposed to why can he just say that any force that was used in excess of that needed reasonably for the arrest is the force that they should be focusing on? Because they need to know that the officers were lawfully performing his duties. Why do they need to know? I'm sorry, why? Isn't the instruction that I just laid out completely sufficient for the jury to be able to figure out what excessive force they should be worrying about? Wait. Say the first part again. Whether that is any force that was not reasonably needed to affect the arrest, without saying whether it's a lawful arrest or an unlawful arrest or anything about it, is the force they should be worrying about. I mean, to a certain extent, that was basically. . . Nobody was told about the Nolo plea and about the fact that he admitted to doing bad things and the fact that he had a conviction and all that, which the federal rule says you can't do. I mean, I would argue in this case, and I would welcome the opportunity for a further brief on the 410 issue, but I would still argue that, and in this case at least, it was either harmless error or no prejudice because. . . That's possible, which is why perhaps we should have a briefing on it. Because they're not told. . . Part of the definition of whether the force used was reasonable was whether he was actively resisting arrest or attempting to evade arrest by flight. That was one of the elements, and this is in the Ninth Circuit Model Jury Instructions. If you look at the supplemental excerpt of record at page 123, I included it in our packet. And so it has elements, and part of the elements are whether, you know, and whether the plaintiff, whether Arrington posed an immediate threat to the safety of the officers, et cetera, whether he was attempting to arrest, obstruct, delay. So they were told all of that. They got the correct instruction. And in this case, there was substantial evidence that he was resisting, that he was, you know, that he was not following their orders, that he did throw down the officer. I mean, so I think in this case it wouldn't have made a difference. And they don't challenge it on substantial evidence at all either. No. Well, it's interesting that plaintiff appellant argues that the jury instruction could have been that Mr. Arrington was convicted of a crime. And I believe counsel said that several times, that the court could have instructed the jurors that the defendant was convicted of a crime. I was surprised by that because that seems prejudicial. That seems as if it opens the opportunity for the jurors to reach all sorts of conclusions without sufficient information, as opposed to being instructed that he entered a no contest or a no low plea, which leaves the opportunity for counsel to explain what that means and explain the circumstances in that he had already served a significant amount of time and that, you know, he would be highly motivated to take this plea and then the jury should disregard. You know, he could make arguments once he had that information before the jury that would seem to be foreclosed by just being told that he was convicted of something, which would leave the jurors to wonder what was it. It could be something much worse than resisting arrest. So I'm not sure what the instruction should have been, but I take issue with the notion that the instruction should have been he committed a crime. And the instruction that is there that's been provided to us in the record is several paragraphs long and gives accurate information to the jurors and tells them they can find there was excessive force either before or after the arrest and all the things they need to look at. Exactly. So that's why I'm saying regardless of how the 410 issue plays out, it's not prejudicial. In the 148, it does have to play into that to a certain extent. Was the defendant, is it your understanding that the defendant did, would be able to stand up and argue that he made this plea essentially, you know, to get out of jail and so on? No, because then he'd be doing a heck problem. Right. So I think he has to concede to the lawfulness of the arrest. And once you concede to the lawfulness of the arrest, and because it is the 148 conviction, like if, for example, he were arrested for, let's say he was arrested for murder, but when he was arrested, he absolutely had no, didn't resist, they said to you, we want to arrest you for murder, and all he did was put his hands behind his back and raise his hands and they let him handcuff him. Any force that they would have used at that point, obviously, other than to take the hand, you know, handcuff him, would be illegal. It would be excessive, correct? So here, they have to know about the 148 because that does play into whether, to a certain extent, whether the force is reasonable or not reasonable. I don't think an argument, to get back to Judge Rezan's point, where he explains the circumstances of the Nolo plea would be challenging the conviction, not suggesting he could say that the jurors should find that he didn't do it or he should challenge the conviction, but it would at least give him the opportunity to explain the circumstances, which would be far less prejudicial than leaving the jurors to wonder what on earth was he convicted of. They wouldn't know if it was by a trial or, you know, what the circumstances were, what the crime was. Right, I mean. So that was the plaintiff's suggestion for an alternative instruction. I mean, I don't know what other instruction should have been given. I mean, I think the only other instruction that would have been given, really, because the rest of the instructions for the battery and excessive force claims are straight out of the Ninth Circuit model jury instructions and straight out of the California Casey instructions, which are the California jury instructions for the state law claims. So he's really just talking about taking away the sentence that he was convicted for the 148, and then the judge explains that because of the 148 they are entitled to use reasonable force, which is a correct statement of the law. And he was still allowed to go to his ‑‑ he was allowed to bring his excessive force claim to the jury. They had two very different views of how the incident went down. They had Arrington's view and they had the officer's view, and the jury chose to believe the officer's. Okay, thank you very much for your argument and your time. Thank you. And I know we didn't even address the Bain Act claim. I don't know if that's ‑‑ Well, the Bain Act law has changed so much. It has. Can I just briefly? Okay, go ahead. One minute. I can say it very quickly. Really, one. Just as to the Bain Act claim, if Your Honor is correct that it has changed a lot since the case was tried, but I think the bottom line is that the cases now, the state of where they are at now, is that if you have a claim for excessive force, that's sufficient for a Bain Act. You don't need something additional, separate, in addition to whatever the force is used. And so I think in this case, the fact that the Bain Act did not go to the jury, because the jury did find excessive force and it did find ‑‑ You would just say it's harmless, so never mind. Basically. And the jury didn't even find in favor of Mr. Arrington on the negligence claim, and the Bain Act clearly cannot be negligent. So, correct. My argument is that it's harmless. Okay. Thank you. Thank you. Sir, we'll give him one minute. Do you think the Bain Act matters anymore? I think it does, because the Bain Act has an unresolved issue. First, because of 410 and 1016, but 410 for the Court's purposes, I think the way that the jury was instructed affected what would have ultimately been the Bain Act, had it been presented to the jury.  Why did it affect the Bain Act? If the 410 instruction, if the instruction that had been given in light of the conviction ‑‑ Oh, right. I understand that. But did they stand or fall together, or is there something separate? So, a Bain Act can act ‑‑ Bain Acts become actionable not only on a completed interference with the constitutional or statutory right, but on an attempted interference with the statutory or constitutional right. And there is more than enough evidence in this record to support a finding of an attempted interference with the constitutional right. I understand the defense's position that this is all harmless error because the jury made a set of findings in favor of the police officers, but the set of findings that it made in favor of the police officers were with respect to the issues that the jury was instructed on. And that's the budget. But the jury was presented two very different versions of the events. So, Mr. Arrington claimed he was essentially doing nothing. I think the officers tried to run him over with a police vehicle, 10 vehicles came up. They called him names. He said, excuse me, sir, I'm disabled, and he did nothing. He absolutely did nothing. He never touched the officer who was injured. None of this happened. The officers presented a completely different account of how they encountered him in that he threw one officer to the ground, who in his back was fractured, and when he was struck with the baton, it was all an accident, et cetera. Two wildly divergent tales of the events. And if the jurors apparently accepted the officer's account because they didn't find excessive force, why would it have made any difference if they were considering a Bain Act claim? Because this Bain Act claim is, with the change in the law, is that an excessive force claim would be sufficient. But he lost his excessive force claim. But an attempted excessive force claim would also be adequate. What's attempted excessive force? It's when you almost hit somebody with your squad car and you're on a bicycle. And that's a carve-out of the facts in this case that were not really at issue because what was really at issue was what happened after the encounter began. I don't know. Attempted excessive force sounds like an anomaly to me. Anyway, thank you all for your argument. Thank you. The case of the United States, I'm sorry, of Arrington v. City of Los Angeles is submitted.
judges: Berzon, Nelson, Bade